**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Jesus ACOSTA–OLIVAS,**
**Defendant–Appellee.**

**No. 94–2281.**

United States Court of Appeals,
Tenth Circuit.

Dec. 5, 1995.

Richard A. Friedman, Appellate Section, Criminal Division, Department of Justice, Washington, D.C. (John J. Kelly, United States Attorney, and Larry Gomez, Assistant United States Attorney, District of New Mexico, Albuquerque, New Mexico, with him on the brief), for Plaintiff–Appellant.

Ron Koch, Albuquerque, New Mexico, for Defendant–Appellee.

Before ANDERSON, LOGAN, and REAVLEY,* Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

The government appeals from the district court's imposition of a seventy-eight month sentence on defendant Jesus Acosta–Olivas. The district court determined that Mr. Acosta–Olivas qualified for a downward departure from the statutory minimum mandatory sentence of ten years, because he met all the requirements of 18 U.S.C. § 3553(f).[1] This appeal addresses the scope of § 3553(f)(5), which requires defendants seeking relief from a statutory mandatory minimum to truthfully provide the government with "all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5). For the following reasons, we remand.

---

* The Honorable Thomas M. Reavley, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

## BACKGROUND

On March 9, 1994, Francisco Javier Rosales–Quiroz, accompanied by his wife and small child, drove a 1990 Nissan Sentra to the United States Border Patrol checkpoint near Truth or Consequences, New Mexico. When questioned by Border Patrol agents about their citizenship, they produced documentation, and when questioned about the car, Rosales–Quiroz stated that he owned the car and had purchased it approximately fifteen days before. A Border Patrol agent apparently recognized the car as the type which was commonly used to hide contraband in its bumpers. When he inspected the rear bumper of the Rosales–Quiroz car, the agent noticed that mud had been placed on the bolts and brackets. With Rosales–Quiroz's consent, the agent removed the rear bumper and found fourteen plastic packages containing a substance which field-tested positive for cocaine. Rosales–Quiroz and his wife were arrested, and a search of their car revealed 23.4 kilograms of cocaine.

Rosales–Quiroz gave conflicting stories as to the details of where in Albuquerque the cocaine was to be delivered. However, consistent with what he had told one DEA agent, Rosales–Quiroz called a telephone number in El Paso, Texas, and was told to go to room 213 at the Howard Johnson Plaza Hotel in Albuquerque. A DEA agent supervised this phone call.

When agents went to the hotel, they observed a man matching Rosales–Quiroz's description of "Willie," whom Rosales–Quiroz said paid him to deliver the cocaine. When Rosales–Quiroz and another agent drove Rosales–Quiroz's car to the hotel parking lot, Mr. Acosta–Olivas approached the car and asked the agent if he had the "produce." When the agent indicated it was in the car, Mr. Acosta–Olivas said he did not want to remove the drugs in the parking lot, and said he would follow the car to a warehouse where they could remove the contraband. When he returned to the parking lot to get into his

---

1. The language of § 3553(f) has been adopted verbatim in the United States Sentencing Comm'n Guidelines Manual at § 5C1.2.

car, after collecting his family from the hotel, Mr. Acosta–Olivas was arrested.

Rosales–Quiroz pled guilty to conspiracy to possess cocaine with intent to distribute. The government filed a motion stating that he had provided substantial assistance to the government under USSG § 5K.1, and he was sentenced to 24 months imprisonment.

Mr. Acosta–Olivas also pled guilty, but refused to cooperate with the government. He did, however, provide the government and court with a letter describing his own involvement in the conspiracy.

Because of the quantity of cocaine involved, Mr. Acosta–Olivas was subject to the statutory mandatory minimum of ten years, under 21 U.S.C. § 841(b)(1)(A). He sought relief from the mandatory minimum under 18 U.S.C. § 3553(f). The district court determined that he qualified under § 3553(f) for relief from the minimum mandatory sentence and calculated his sentence as follows: the court adopted the presentence report recommendation that the base offense level was 34 under USSG § 2D1.1(c)(3), based upon the 23.4 kilograms of cocaine. The court also adopted the presentence report's recommendation that Mr. Acosta–Olivas receive the maximum three-level adjustment for acceptance of responsibility under USSG § 3E1.1(a) & (b). The court gave Mr. Acosta–Olivas a further three-level adjustment because he was a minor participant.[2] The court accordingly calculated that the total offense level was 28, which, with Mr. Acosta–Olivas' criminal history category I, yielded a guideline range of 78–97 months. The court then sentenced him to a seventy-eight month term. This appeal by the government followed.

## DISCUSSION

■ The only issue in this case is whether the district court correctly determined that Mr. Acosta–Olivas met the requirements of 18 U.S.C. § 3553(f)(5). Section 3553(f) provides that a defendant can be given a guideline sentence, instead of the mandatory minimum prescribed by statute, if the court finds at sentencing that:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. 848; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. 3553(f). The government argues that § 3553(f)(5) requires a defendant "to tell the government all he knows about the offense of conviction and the relevant conduct, including the identities and participation of others, in order to qualify for relief from the statutory mandatory minimum sentence." Appellant's Br. at 10. Mr. Acosta–Olivas argues that the section merely requires him to detail his own personal involvement in the crime, and he asserts that the district court correctly held that his letter met that standard.

■ We review de novo the district court's interpretation of a statute or the sentencing guidelines. *United States v. Richards,* 67 F.3d 1531, 1533 (10th Cir.1995); *United*

---

**2.** The presentence report recommended no downward adjustment for Mr. Acosta–Olivas' role in the offense.

*States v. Wilson,* 41 F.3d 1403, 1404 (10th Cir.1994); *United States v. Phelps,* 17 F.3d 1334, 1337 (10th Cir.1994).[3]

Section 3553(f) was enacted as a "safety valve" to permit courts to sentence less culpable defendants to sentences under the guidelines, instead of imposing mandatory minimum sentences. As the legislative history of the section states, without such a safety valve, for "the very offenders who most warrant proportionally lower sentences—offenders that by guideline definitions are the least culpable—mandatory minimums generally operate to block the sentence from reflecting mitigating factors." H.R.Rep. No. 103–460, 103d Cong., 2d Sess., 1994 WL 107571 (1994). This would have the unfortunate effect that the "least culpable offenders may receive the same sentences as their relatively more culpable counterparts." *Id.* The legislative history does not, however, assist us in interpreting the scope of § 3553(f)(5). We conclude that the plain language of the statute and its implementing guideline, as well as the scheme of the guidelines, indicate that the government's interpretation is correct. The few cases addressing this provision with any specificity have so held.

As indicated, the statute and guideline themselves require the disclosure of "all information and evidence ... concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5). The phrase "all information and evidence" is obviously broad. The Application Notes to § 5C1.2 define "offense or offenses that were part of the same course of conduct or of a common scheme or plan" to mean "the offense of conviction and all relevant conduct." USSG § 5C1.2, comment. (n. 3). "Relevant conduct" has in turn been defined to include "in the case of a jointly undertaken criminal activity ... all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." USSG § 1B1.3(a)(1)(B). Thus, the guidelines appear to require disclosure of "all information" concerning the offense of conviction and the acts of others if the offense of conviction is a conspiracy or other joint activity.

As applied to Mr. Acosta–Olivas, the guideline would therefore require disclosure of everything he knows about his own actions and those of his co-conspirators. *See United States v. Rodriguez,* 69 F.3d 136, 143 (7th Cir.1995) (affirming district court's conclusion that defendant was ineligible for a § 3553(f) reduction because "he produced no information concerning the offense; if he did not know the identities of [drug suppliers or buyers], then he should have at least communicated that fact to the government"); *United States v. Wrenn,* 66 F.3d 1, 3 (1st Cir. 1995) (rejecting applicability of § 3553(f), stating defendant "did not provide the government with all of the information and evidence he had concerning the very crime to which he pleaded guilty [and observing] he claimed to have a number of reliable customers to whom he supplied cocaine, but he supplied nary a name to the government"); *United States v. Saint Martinez,* No. 94–277, 1995 WL 328127 at *2 (D.N.J. May 24, 1995) (holding defendant ineligible for safety valve because he "failed to provide information that was highly likely to be [in] his possession," including identities of co-conspirators); *United States v. Buffington,* 879 F.Supp. 1220, 1223 (N.D.Ga.1995) ("Defendant is obliged to provide information relevant to his own course of conduct *and* his immediate chain of distributors, i.e., from whom he bought and to whom he sold, if he wishes to avail himself of the benefits of § 3553(f)."); *see also* Vincent L. Broderick, *Flexible Sentencing and the Violent Crime Control Act of 1994,* 7 Fed.Sentencing Rep. 128, 129 (1994)

---

**3.** In this case, the district court interpreted the scope and meaning of § 3553(f)(5). We therefore review that legal determination de novo. We note, however, that a district court's application of the correct legal standard to a particular defendant, and the specific conclusion that the defendant is or is not eligible for relief under § 3553(f), would ordinarily be reviewed for clear error. *See United States v. Rodriguez,* 69 F.3d

136, 144 (7th Cir.1995) ("We believe that the district court's determination that a defendant is not eligible for the reduction permitted by sec. 5C1.2 ought to be governed by the clearly erroneous standard. The court's determination is a fact-specific one and will often depend on credibility determinations that cannot be replicated with the same accuracy on appeal.").

(describing § 3553(f)(5) as a "'tell all that you can tell' requirement").

■ Mr. Acosta–Olivas argues that this interpretation has the effect of requiring him to become a government informant, and thereby renders USSG § 5K1.1 on substantial assistance redundant. As both parties point out, we should interpret statutory provisions and the guidelines in a way which gives meaning and effect to each part of the statutory or guideline scheme. *See Daleske v. Fairfield Communities, Inc.,* 17 F.3d 321, 324 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 1832, 128 L.Ed.2d 461 (1994); *Phillips Petroleum Co. v. Lujan,* 4 F.3d 858, 863–64 (10th Cir.1993). In holding that § 3553(f)(5), and therefore § 5C1.2, require a defendant to disclose all that he knows concerning both his own involvement in the crime and that of any co-conspirators, we do not render any part of the guidelines superfluous or redundant.

Section 5K1.1 concerning substantial assistance operates very differently from § 5C1.2. Section 5K1.1 requires a motion from the government and the government's evaluation of the extent of the defendant's assistance is given "substantial weight." USSG § 5K1.1, comment. (n. 3). Under § 5C1.2, by contrast, the court determines whether a defendant has complied with its provisions, including subsection 5. *See United States v. Cabell,* 890 F.Supp. 13, 16–17 (D.D.C.1995); *Buffington,* 879 F.Supp. at 1222–23; *United States v. Aristizabal,* No. 93 Cr. 1091, 1994 WL 689089 (S.D.N.Y. Dec. 8, 1994). And the section specifically states that a defendant may still enjoy the benefits of the section even if the information he provides is not "relevant or useful" to the government. As one court recently observed, it:

> eliminates the necessity for a defendant to obtain a letter from the prosecution under section 5K1 ... in order to obtain a reduction of an otherwise mandatory minimum sentence. Instead, a defendant may come forward and furnish all available information and obtain consideration as a result if justified, regardless of the position of the prosecutor and regardless of whether anyone else can be prosecuted and convicted based on the defendant's disclosures.

*Shendur v. United States,* 874 F.Supp. 85, 87 (S.D.N.Y.1995). Thus, § 5C1.2, if its directive that a defendant disclose "all information" is interpreted to require disclosure of the identities of co-conspirators, does not make § 5K1.1 redundant. *See* Broderick, *supra,* at 129 (describing § 3553(f)(5)'s "tell all that you can tell" requirement as "less draconian that the former reliance on letters from the prosecutors under § 5K1.1"). It operates differently anyway, regardless of whether a defendant must "tell all" or not.

On the other hand, Mr. Acosta–Olivas' interpretation of § 3553(f)(5) and § 5C1.2 renders USSG § 3E1.1(b)(1) concerning enhanced acceptance of responsibility largely redundant. Under § 3E1.1(b)(1), a defendant with an initial offense level of 16 or higher, like Mr. Acosta–Olivas, can qualify for an additional 1 level decrease if he "timely provid[es] complete information to the government concerning his own involvement in the offense." USSG § 3E1.1(b)(1). While § 3E1.1(b)(1) requires "timely disclosure," and § 5C1.2(5) requires disclosure "not later than the time of sentencing," Mr. Acosta–Olivas' interpretation of § 5C1.2(5) to only require disclosure of his own involvement would make the two sections virtually identical.

In sum, § 3553(f), as repeated in guideline § 5C1.2, was clearly intended to permit courts to sentence relatively less culpable offenders to sentences below an otherwise applicable mandatory statutory minimum sentence. Besides requiring that a defendant seeking to avail himself of this safety valve meet certain objective criteria, the section also requires that a defendant truthfully tell all he knows to the government, regardless of whether this information is useful to the government. Presumably, this requirement assists courts in determining whether a defendant truly is relatively less culpable. We therefore hold that the district court erred in interpreting § 3553(f)(5) to require a defendant to reveal only information regarding his own involvement in the crime, not information he has relating to other participants.

For the foregoing reasons, we REMAND this case with instructions to vacate the sen-

tence and resentence. If, at resentencing, the court makes a factual finding that, in deciding what information to disclose to the government, Mr. Acosta–Olivas relied upon the district court's interpretation of § 3553(f)(5), the court shall allow him the opportunity to comply with the statute as this court has interpreted it in this opinion.